**SNEED v. POOL et al.**

No. 6014.

Court of Civil Appeals of Texas.
Amarillo.

Jan. 30, 1950.

Rehearing Denied Feb. 27, 1950.

Morgan, Culton, Morgan & Britain and Stone & Stone, Amarillo, for appellant.

Adkins, Madden, Folley & Adkins, Amarillo, for appellees.

LUMPKIN, Justice..

This suit is for the recovery of a sum of money equal to cértain income taxes paid the Government of the United States for the years 1942 to 1947, inclusive. The appellant, Brad Love Sneed, the surviving wife of J. T. Sneed, Jr., filed the suit against the appellees, Elizabeth Sneed Pool, individually, and L. J. Haile, H. C. Pipkin and Elizabeth Sneed Pool, as the independent executors and trustees under the will of J. T. Sneed, Jr. The taxes sued for were paid by the appellant upon a $15,000 annual payment made to her by the appellees from the gross income of the J .T. Sneed, Jr., trust estate. The will, which provides for the trust estate, was executed by the testator, J. T. Sneed, Jr., on October 5, 1936, prior to the time he was married to the appellant. A codicil, however, which bequeaths to the appellant annually the sum of $15,000, was signed by the testator after his marriage to Mrs. Sneed, the appellant. The appellee, Elizabeth Sneed Pool, is the testator's daughter but not the daughter of the appellant. The testator died on October 15, 1940, and left an estate valued in excess of $700,000.

In his will the testator directed that his debts be paid from his estate; he bequeathed to his daughter, Elizabeth Sneed Pool, the family residence located at Amarillo, Texas; and he directed that the residue of his estate be placed in trust. The will continues as follows:

"Fourth: 1. I desire and direct that my Executors shall as rapidly as can be done after my death, in the exercise of their sound discretion, convert the personal property of my estate into cash or into bonds, and other securities of such nature as they shall deem advisable. All such cash, bonds and/or securities, as well as all moneys derived from royalties, rentals and leases of oil and gas lands, rentals, lease and sale of lands, or from whatever source obtained which shall come into the hands of my said Executors, shall be held, managed, invested and reinvested by them, and after payment of taxes, fixed charges, operating expenses and the expenses of administration, my said Executors shall then pay over the net income from my said estate to my daughter, Elizabeth Sneed Pool during her lifetime, should she survive me."

The will further provides that at the death of Elizabeth Sneed Pool and at a time when her youngest child has reached his majority, the corpus of the estate is to be divided among certain legatees.

In ·a codicil dated November 16, 1938, after reciting that he had married since the execution of his will, the testator provided for the appellant and her two daughters as follows:

"I do hereby give and bequeath to my beloved wife, Brad Love Sneed, should she survive me, and for so long as she lives and remains my widow and unmarried, in cash the sum of Fifteen Thousand ($15,000.00) Dollars per year, to be paid to her by my Executors and Trustees out of my estate as a fixed charge and before the distribution and payment of the net income of my estate as in my said Will provided.

"Further, I do hereby give and bequeath unto each of my adopted daughters, Dorothy Love and Betty Love, in cash the sum of Fifteen Thousand Dollars ($15,000.00), such bequest to be paid to each of them respectively when she shall have attained the age of twenty-five (25) years * * *.

"I desire and direct that the bequests hereinabove provided shall be paid out of my estate from time to time and in the amounts herein provided, as a fixed charge and before the distribution and payment of the net income of my estate as provided in my said Will of October 5, 1936 hereto attached; and it is my desire, and I here direct, that this Codicil be annexed to and made a part of my said Will of October 5, 1936 to all intents and purposes."

As expressed in the appellant's pleadings, the object of this suit is to determine the intention of the testator by an interpretation of his will and codicil. The appellant contends it was the testator's intention that she should receive $15,000 a year from his estate free and clear of any claim for taxes. She insists that the statutes and rules of law, as they existed at the time the testator executed the will and codicil, reveal his intent to give her $15,000 a year free of all income taxes and that this intent cannot be defeated or changed by the 1942 amendment to our income tax laws.

Trial was before the court without the intervention of a jury. In its judgment the court concluded that under the terms of the will and codicil the executors are not required to pay the income taxes due on the $15,000 paid annually to the appellant and that the language of the will and codicil does not indicate an intention on the part of the testator that his estate should pay income taxes upon the distributions made by the estate to the appellant. The court rendered a "take nothing" judgment in favor of the appellees. To this judgment the appellant gave notice of appeal and in due time perfected her appeal to this court.

In response to appellant's request, the trial court filed findings of fact and conclusions of law. The court found that the $15,000 annual payment is made to appellant out of the gross income of the Sneed estate and that the appellant herself is obligated to pay the yearly income tax; that the terms and provisions of the will and codicil do not require the Sneed estate to pay the appellant's income tax; and that it was not the intent of the testator, as shown by his will of October 5, 1936, and as modified by the codicil of November 16, 1938, that the appellant receive annually $15,000 free of Federal income taxes. The court concluded as a matter of law that the will and codicil do not impose on the Sneed estate the obligation of paying the appellant's income tax nor is the estate obligated to reimburse the appellant for the sums she has been required to pay since January 1, 1942, as Federal income taxes.

In attacking the court's judgment, the appellant contends that the Sneed estate is obligated to pay income taxes on her annual income from the estate for the following reasons: First, under the terms of the will and codicil the annual payments are absolute and fixed charges against the corpus of the estate, and the payment of the yearly installments is not conditioned upon the existence of an estate income; second, because under the law as it existed at the time J. T. Sneed, Jr., executed the will and codicil, fixed charges against the corpus of an estate were considered gifts and not incomes and were thus not taxable under the income tax laws as they had existed prior to 1942.

In discussing the appellant's contentions, we shall first consider the language of the will and codicil and determine from what portion of his estate the testator intended the annual payment to be made; next, we shall search the instructions set forth in the will and codicil and determine whether the testator specifically ordered his executors and trustees to pay the income taxes levied against the $15,000 the appellant receives annually from his estate; and last, we shall investigate the law as it existed at the time J. T. Sneed, Jr., executed the will and codicil and determine whether it is helpful in revealing the testator's intent in the matter of who should pay the income taxes on the appellant's yearly benefaction.

In the beginning we should like to point out that while it is competent for a testator to pass a gift free of income taxes, it has been held that the practical effect of such provision is to increase the gift. Our courts have held that the intent of a testator to increase a gift will not be drawn from vague or uncertain language. Sherman v. Moore, 89 Conn. 190, 93 A. 241. Whether a testator intends to give an annuity plus a sum equal to the income tax or whether he intends to bequeath an annuity and to leave to the annuitant the burden of bearing his own income tax is a question which can be answered only by construing the will. In re Saillard, 2 Ch. (Eng.) 401-C.A., cited in the annotation in 51 A.L.R. 460.

■ However, in our opinion, the appellant's legacy does not constitute a "gift" as that word shall hereinafter be defined; and if the appellant's yearly benefaction did constitute a gift, neither the will nor the codicil authorizes it to be increased by the payment of the income taxes. When construed in connection with each other, the will and the codicil are clearly susceptible to the interpretation that the testator intended that the annual $15,000 payments should be made from the gross income of the trust estate. Referring to the excerpts from the will and codicil, as quoted above, it will be noticed that both the will and codicil use the words "fixed charge." The appellant contends that the words "fixed charge" as used in the codicil in referring to the source of her income mean the corpus of the estate as well as the income of the estate, while the appellees insist that these words are to be interpreted as a charge against only the net income of the estate.

As a rule, fixed charges are the general running expenses attached to every business. Vol. 17, Words and Phrases, Perm. Ed., page 109. As used in this will and codicil, however, the words are limited to the fixed charges of the trust estate. In the fourth section of the will the testator authorizes his executors to take charge of his estate, manage it, and invest and reinvest the proceeds. He then instructs his executors as to the disposition of the income of the trust estate: They shall first pay the taxes and the fixed charges and the operating expenses and the expenses of administration; they "shall then pay over the net income from my said estate to my daughter, Elizabeth Sneed Pool during her lifetime, should she survive me." In this section the testator defines the words "net income." According to his will, the net income is to be determined by subtracting from the gross income of the trust estate the taxes, the fixed charges, the operating expenses, and the expenses of administration. Nowhere else in the will, other than in the fourth section, does the testator use the words "fixed charges." However, in the codicil, wherein the appellant is bequeathed $15,000 annually, the testator directs that the money is to be paid her "out of my estate as a fixed charge and before the distribution and payment of the net income of my estate as in my will provided." If the testator intended that the words "fixed charge" should imply a charge against the corpus of his estate rather than against the gross income of his trust estate, then why did he reiterate in his codicil that the appellant's bequest be paid by the executors out of his estate as a fixed charge and before the distribution of the net income as provided in his will? And, if we had any doubt as to the testator's intent and meaning, such is resolved by his direction immediately following that portion of the codicil which bequeaths $15,000 to each of his adopted daughters. Here the testator directs that "the bequests hereinabove provided"—viz., the annual payments to the appellant and the bequests to each of his adopted daughters—shall be paid out of his estate as a fixed charge before the net income of his estate is distributed as provided by his will. According to the will, none of the corpus of the estate is to be distributed during the life of Elizabeth Sneed Pool or during the existence of the trust. It is only the net income which can be distributed to anyone; therefore, any fixed charge must be made against the gross income of the trust estate.

Prior to 1942, our federal courts had held that where a devise was a charge upon the whole estate, a distribution to a widow was a gift, and a trustee was responsible for the payment of the income tax. Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; Helvering v. Pardee, 290 U.S. 365, 54 S.Ct. 221, 78 L. Ed. 365.

"Also prior to 1942, Sec. 162(b) of the Internal Revenue Code, 26 U.S.C.A.Int. Rev.Code, § 162(b), provided that, in computing the net income of an estate or trust, there shall be allowed as a deduction in income for the taxable year amounts distributed currently to beneficiaries, but the amounts so allowed were to be included in the net income of the beneficiaries whether distributed to them or not. So it was held in Helvering v. Butterworth, 290 U.S. 365,

54 S.Ct. 221, 78 L.Ed. 365, that a widow who accepts a bequest of income in lieu of her statutory rights must pay the tax thereon and the trustees are entitled to a corresponding deduction from gross income." See Carlisle v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 645, 646, 1 A. L.R.2d 1277.

Among others, the appellant has cited in support of her contentions the cases of Burnet v. Whitehouse, supra, and Helvering v. Pardee, supra. According to Toretta v. Wilmington Trust Co., D.C., 71 F. Supp. 281, 285, these two cases are to be distinguished from the facts before us. In the Toretta case the court said: "Those cases held that where an annual benefaction was payable as a specific sum at all events and regardless of the existence of sufficient trust income, and where the corpus of the fund must be encroached for the payments, such payments to the beneficiary were not payments of income but constituted a 'gift' or 'annuity' and that the beneficiary was not liable for income taxes thereon. See also 6 Mertens Law of Federal Income Taxation 287. As a consequence the trustee could not take such payments as deductions and the trustee paid an income tax on the income of the trust estate."

■ A reading of the will and codicil convinces us that the appellant's annual benefaction does not constitute a "gift" as that word is defined in the excerpt quoted above. Under the will and codicil the testator intended that the yearly installments of the appellant's bequest be paid from the gross income of the estate. This was the finding of the trial court, and we find sufficient evidence of probative force to substantiate such a finding. Thus under the authorities cited, the appellant is personally liable for the income taxes on the $15,000 benefaction, both before and after the enactment of the 1942 Amendment to the Internal Revenue Law unless, of course, in the will and codicil the executors are instructed to pay appellant's income taxes. Carlisle v. Commissioner of Internal Revenue, supra, Sections 22 and 162, Title 26 U.S.C.A.

■ The next question is whether, in either the will or the codicil or both, there is any language which requires the Sneed estate to pay the income taxes on the annual payments to the appellant. The appellant asserts that the testator's intent is to be determined in the light of the law as it existed at the time he executed the codicil and that, because of the laws then in existence, it must be assumed he intended all income taxes on the appellant's bequest to be paid by the estate. We cannot agree with the appellant.

In the first place, the language used in the will and codicil does not indicate an intent on the part of the testator that his estate should pay the appellant's income taxes or any of her other taxes. Again referring to the will, we find two references to taxes. In the first paragraph of the fourth section the testator speaks of the duties of his executors and instructs them to pay to his daughter, Elizabeth Sneed Pool, the net income from his estate "after the payment of taxes, fixed charges, operating expenses and expenses of administration." He does not instruct his executors to pay the income taxes on bequests, as the appellant argues. In our opinion a reading of the paragraph destroys such a contention. The words "taxes, fixed charges, operating expenses and expenses of administration" relate to his estate, and his reference to taxes relates only to those taxes owed by the estate and not to the taxes imposed on the appellant by any taxing unit. The word "taxes" manifestly refers to property in the hands of the trustees and not to that property of which the beneficiary becomes the owner by virtue of the act of distribution. Should we attach to the word "taxes" the meaning urged by the appellant and assume that by the use of the word the testator ordered his executors to pay the appellant's income tax, then it would be reasonable to contend that the appellees are responsible for the fixed charges, operating expenses, and the other liabilities which the appellant must necessarily incur in the conduct of her personal affairs. The word "taxes" is not used in the codicil.

918

We now face the second part of the appellant's contention, i. e., his intent must be determined from the law as it existed at the time the testator signed the will and the codicil. In the case of Toretta v. Wilmington Trust Co., supra, a case similar in many respects to the one before us, the court made the following pertinent observation: "Perhaps the fundamental feature in this case lies in the possible misconception of the nature of the income tax. Prior to the amendment of 1942 it is incorrect to say that the trustee paid the income tax of the plaintiff or for the plaintiff. Under the then law the plaintiff was not liable at all for income tax on the amounts paid to her from this trust estate and therefore no tax was paid for her. After the amendment of 1942 the status of the plaintiff was changed and she then became taxable. The tax assessed against the plaintiff is not paid, primarily or necessarily, out of the annuity she receives from this estate, but is simply a tax imposed because she does receive the stipulated amount as income."

From a reading of the will and codicil, we are unable to come to the conclusion urged by the appellant, i. e., that the testator, by the mere act of naming the amount the appellant is to receive yearly from his estate, gave full consideration to the laws as they then existed as well as to any future laws. If J. T. Sneed, Jr., could have anticipated some of the events of the past ten years, he might possibly have instructed his executors, by a positive and express provision in the codicil, to pay the appellant's income taxes. The word "taxes," however, does not even appear in the codicil. Neither the trial court, nor this court, can substitute for the clearly expressed intent of the testator any speculations as to what he might have done if he had given some thought to the possibility of a change in the income tax law. An investigation of the law as it existed prior to the enactment of the 1942 Amendment to the Internal Revenue Law does not cast any additional light on the question of the testator's intent. In our opinion it was the testator's clear intent that the appellant's benefaction should be paid, at all times, from the gross income of the trust estate. Under the law, she is personally liable for the income taxes as each installment is paid by the appellees. Toretta v. Wilmington Trust Co., supra; Board of Trustees of New Bern Graded Schools v. First-Citizens Bank & Trust Co., 230 N.C. 264, 52 S.E.2d 805; Clark v. Mississippi Valley Trust Co., 357 Mo. 785, 211 S.W.2d 10; Norton v. Jones, Tex.Civ.App., 210 S.W.2d 820, writ refused.

In our opinion the trial court gave a proper interpretation to the testator's will and codicil. For the reasons given, the appellant's points of error are overruled, and we affirm the judgment of the court below.