## BARBOUR v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8319.

Circuit Court of Appeals, Fifth Circuit.

April 6, 1937.

Pat N. Fahey, of Houston, Tex., for petitioner.

Norman D. Keller, Ellis N. Slack, and Sewall Key, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., Morrison Shafroth, Chief Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The commissioner found, and the board affirmed, that one-half of the profit on liquidation of stock, property of the community of Mr. and Mrs. Clyde Barbour, in fact paid to and received by the independent executors of Clyde Barbour, deceased in 1931, while the estate was still in administration, was in law received by and taxable to Mrs. Barbour as income in that year.

By her petition for review Mrs. Barbour takes issue with this finding and determination, as a complete ignoring of the controlling facts, to give effect to a supposed, but mistaken, analogy. She insists that in law, as in fact, not she, but the independent executors received her share of the profit, as they held her interest in the stock as statutory trustees, and that not having received it she may not be taxed on it.

She points out that the commissioner and the board, in insisting that profits on liquidation of community property, realized after the dissolution of the community by death, and paid to her husband's independent executors, are in law received by the wife exactly as such profits would in law have been received by her if they had been realized in her husband's lifetime and paid over to him, completely overlooked the differences in fact and in law between the community relation of husband and wife, and the relation between the surviving wife and the independent executors of the husband. She points out, in short, that in their attempt to extend by analogy, after the community has been dissolved, the principles governing its active existence, the commissioner and the board have closed their eyes to an obvious fact; that the old relation of a partnership between husband and wife, the husband the managing, the wife the silent, partner, has terminated, and an entirely new relation between the wife, as surviving partner, and the husband's successors as independent executors of his estate, and statutory trustees of her community interest, has now arisen. She points out that during the exis-

tence of the community, the husband, in his capacity as managing partner, receives community profits as he does other community income, for himself and for her, as the joint income of the two of them. The executors, on the other hand, receive such profits, as the income of their statutory trust estate, dedicated to the purposes of the trust, and subject alone to their disposition and control, to execute such purposes.

The facts are stipulated. Clyde A. Barbour, a resident of Houston, Tex., died June 24, 1931, leaving an independent will appointing Jennie Hobbs Barbour, Jessie Collins Barbour, and the president of the First National Bank of Houston independent executors of his estate, and trustees of the trusts created in it. Mrs. Barbour, his widow, filed her return for the year 1931, reporting one-half of the acknowledged community income. She did not report any part of the profit from the liquidation, in 1931, of 1,000 shares of New Process Carbon Black Company, Inc. Of this stock 999, $\frac{3}{20}$ shares had been acquired as community property in 1926, 1927, and was at the time of the dissolution of the community, still owned as such. No partition of Mrs. Barbour's one-half interest in it was made during the period from June 25, to December 31, 1931, and her interest in this stock, as in all of the community estate, was administered with the rest of Barbour's assets, the executors retaining possession and control of the wife's undivided one-half of the community property and managing and operating the entire estate as a unit. On December 4, 1931, $\frac{17}{20}$ shares of stock was acquired, bringing the total to 1,000 shares. In December, 1931, the company was liquidated and for the 1,000 shares of stock which had cost $205,258.81 the executors were paid $252,223.40. These proceeds were used along with other assets of the estate,

to pay community debts and expenses of administration during 1931 and subsequent years. None of the proceeds derived from the liquidation of this stock have ever been paid directly to Mrs. Barbour.

These are the controlling statutes and decisions. Revenue Act 1928, § 142 (a), 26 U.S.C.A. § 142 and note, "Fiduciary Returns." [1] Article 3630, Rev.Civ.Stats. of Texas 1925,[2] Hollingsworth v. Davis, 62 Tex.438,[3] Carlton v. Goebler, 94 Tex. 93, 58 S.W. 829, holding that the appointment of an independent executor confers upon him the power to administer the community estate of the testator and his deceased wife, and Lovejoy v. Cockrell (Tex.Com.App.) 63 S.W.(2d) 1009, 1010. The last-cited case is concerned with the independent will of a husband, and its effect upon the administration of community property. In it the law of Texas is examined, its controlling statutes are cited, and it is upon full deliberation held (1) the community property of a husband and his wife is chargeable with the debts of the husband. (2) The community property, for the purpose of paying his debts, which are chargeable to it, is as an entirety regarded in law as belonging to his estate. (3) While the administration of the estate of the deceased husband is pending in the probate court, the entire community property is subject to the exclusive jurisdiction of that court. Said the court:

"Neither the surviving wife, as such, has authority under the statutes, to sell community property for the purpose of paying community debts of her husband, nor, in case she do not survive, does that authority appertain to the administration of her estate. Authority in that respect appertains exclusively to the pending administration of the estate of the deceased husband."

It was further concluded that an administration by independent executors stood

---

[1] "Every fiduciary * * * shall make under oath a return for any of the following individuals, estates, or trusts for which he acts. * * * (c) Any fiduciary required to make a return under this chapter shall be subject to all the provisions of law which apply to individuals."

[2] Article 3630 (3559) (2186) (2131) Property Held by Executor. "Until such partition is applied for and made, the executor or administrator of the deceased shall recover possession of all such common property and hold the same in trust for the benefit of the creditors and others entitled thereto."

[3] "Upon the granting of letters of administration on the estate of S. P. Hollingsworth, the wife's control over the community property ceased, and the estate passed under the jurisdiction of the county court for administration and settlement. Moke v. Brackett, 28 Tex. 443; Tucker v. Brackett, 28 Tex. 336, 337."

in the same case, and that by an independent will a husband, who owes community debts, could divert from the probate court the administration of his entire estate, including all the community property. "The statute, for the purposes of the statute, regards the community property of the husband and wife, in case there be community debts, as belonging entirely to the estate of the husband, and does not authorize a dismemberment of the estate for administration purposes."

It is settled law that income received by the administrator of an estate, while the administration is in progress, must be returned and taxes paid on it by the administrator as income of the estate, and not by the person ultimately entitled to it. Kuldell v. Commissioner (C.C.A.) 69 F.(2d) 739. If this were the case of an administration in court of an intestate, or with will annexed, it would seem, upon the authority of that case and the Texas authorities governing such administration, that it must be held that Mrs. Barbour had not received this profit as income so as to make it taxable to her. Lovejoy v. Cockrell leaves in no doubt we think that an independent executor stands in the same case, and that income received by him while administering the property as executor of the husband and statutory trustee, is not received by or taxable to the surviving member of the community.

We are not concerned here with the form of return which the executors should have made, whether the profit should have been treated by them for the purposes of their administration as income of the husband's estate, or as partly income to the executorship and partly to the trusteeship. It is sufficient for us to hold, as we do, that either as executors of the husband or as statutory trustees for the benefit of the creditors and others entitled to it, the executors, and not Mrs. Barbour, received the profit, and the executors, and not Mrs. Barbour, should have returned it. When and if Mrs. Barbour receives this profit from the executors she should, of course, account for and pay the taxes on it. Until she does, she may not be required to.

The judgment of the board is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.