LOUISA HUVAL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huval v. Commissioner
Docket No. 6941-82.
United States Tax Court
T.C. Memo 1985-568; 1985 Tax Ct. Memo LEXIS 62; 50 T.C.M. (CCH) 1452; T.C.M. (RIA) 85568; November 20, 1985. *62 P was named Independent Executrix of her deceased husband's estate. The estate included a working interest in an oil and gas lease located within a community property state. Prior to his death, P's husband managed and controlled the oil and gas lease. Held, P carried on the oil and gas lease in her capacity as Independent Executrix and not in her individual capacity. Held further, P was not carrying on a trade or business within the meaning of section 1402(a), and consequently her one-half interest in income from the sale of oil and gas is not subject to self-employment tax. Clarence P. Brazill, Jr., for the petitioner. James R. Turton and W. Jere Blackshear, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Judge:* Respondent determined a deficiency of $1,390 in petitioner's 1978 Federal income tax. After concessions, the issue for decision is whether Louisa Huval (petitioner) was carrying on a trade or business such that her one-half community property interest in income from the sale of oil and gas is subject to self-employment tax pursuant to sections 1401 and 1402, I.R.C. 1954. [1] Resolution of this issue is dependent upon a determination of whether petitioner managed and *63 controlled an oil and gas lease in her individual capacity or as Independent Executrix of the I. J. Huval Estate. The case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Pampa, Texas, at the time of filing the petition herein. I. J. Huval (Huval) and petitioner were married on May 13, 1927. Prior to June 7, 1967, Huval was in partnership with E. J. Dunigan, Jr. (Dunigan) and held joint interests in several oil, gas and mineral properties. On June 7, 1967, Huval and Dunigan dissolved the partnership and divided their joint interests in property. [2] *64 As a result of the division, Huval obtained the oil and gas lease (the Raymond Lease) which is the subject of this proceeding. The Raymond Lease was community property acquired prior to the death of Huval and during the marriage of Huval and petitioner. Prior to his death, Huval operated the Raymond oil and gas lease as an independent operator in the business of oil and gas production. Huval was subject to and paid self-employment tax on the full amount of income derived from the operation of the Raymond Lease. Petitioner's occupation was that of housewife prior to her husband's death and she, of course, paid no self-employment tax. On December 3, 1973, Huval died. His Last Will and Testament appointed his surviving spouse, petitioner, as Independent Executrix of his estate. Petitioner qualfified as Independent Executrix and received letters testamentary on January 3, 1974, from the County Court of Gray County, Texas. The will provided and the Court so ordered that, after petitioner had taken the oath of executrix as provided by law, no further action would be taken by the Court in the administration of the estate other than to receive in due course an Inventory, Appraisement and List of Claims of the *65 estate. The Inventory, Appraisement and List of Claims was approved by the Court on August 28, 1974. Petitioner, pursuant to the terms of the will, inherited her deceased husband's entire estate. On or before August 3, 1974, [3] *66 petitioner as Independent Executrix timely filed Form 706 (United States Estate Tax Return). On August 13, 1974, petitioner, acting as Independent Executrix of the Estate of I. J. Huval, elected to pay the estate tax due by the installment method in accordance with section 6166. The net estate tax payable and reported on Form 706 was $33,920. The amount qualifying for installment treatment was $23,897. Petitioner, as Independent Executrix, elected to pay the amount qualifying for installment treatment in 10 equal annual installments, plus interest at the rate of four percent per year on the unpaid balance. On September 16, 1974, respondent accepted the initial payment of estate taxes in the amount of $12,413. In a letter dated May 5, 1975, sent to petitioner as Independent Executrix, respondent accepted the estate tax return as filed. On December 28, 1978, petitioner, as Independent Executrix, timely filed Form 1041 (U.S. Fiduciary Income Tax Return) for the fiscal year ending November 30, 1978, for the Estate of I. J. Huval. Petitioner timely filed her individual income tax return for 1978 on Form 1040 reporting $16,598 of income from the Estate of I. J. Huval. Petitioner has conceded certain adjustments which result in an increase to $18,189 in the amount of income properly reportable by her from the estate. The parties agree that the $18,189 is income from the Raymond Lease and constitutes petitioner's one-half interest in the 1978 income from said lease. However, as previously stated, the dispute arises from respondent's determination that the $18,189 is self-employment income subject to self-employment tax. (Respondent has not sought to impose the self-employment tax on the income from the remaining one-half interest in the lease.) To support his position, respondent argues that the Raymond Lease was operated and managed by petitioner in her individual capacity and not in her capacity as Independent Executrix. Alternatively, respondent contends that *67 even if petitioner managed and controlled the Raymond Lease in her capacity as Independent Executrix, the $18,189 of income from the estate is nevertheless subject to self-employment tax because the estate was not in the process of administration in 1978. Respondent argues that all of the debts of the estate was paid prior to 1978, thereby obviating any need to administer the estate. Conversely, petitioner contends that she managed and controlled the Raymond Lease in her capacity as Independent Executrix rather than in her individual capacity. In support of her position, petitioner invites our attention to Texas probate law which delineates the scope of the executrix's authority over community property during administration. Furthermore, petitioner argues that the estate was in the process of administration during 1978 pursuant to a valid section 6166 election to pay the estate tax liability in 10 equal annual installments. Section 1401 imposes a tax upon the self-employment income of every resident individual. Section 1.1401-1(a), Income Tax Regs. In general, self-employment income consists of the net earnings derived by an individual (other than a non-resident alien) from a trade *68 or business carried on by him as a sole proprietor or by a partnership of which he is a member. Section 1.1401-1(c), Income Tax Regs. However, section 1.1402(a)-2(b) provides: (b) Trade or business carried on. The trade or business must be carried on by the individual, either personally or through agents or employees. Accordingly, income derived from a trade or business carried on by an estate or trust is not included in determining the net earnings from self-employment of the individual beneficiaries of such estate or trust. For purposes of this case, the significant words in the above regulation are "trade or business carriedon by an estate or trust" (emphasis added). Was not business of the Raymond Lease carriedon by petitioner as Executrix, by her as an individual for her own benefit, or partly in each capacity? We look to Texas law for the answer, for it has long been the rule that while Federal law determines Federal tax consequences, local law determines the underlying substance upon which those consequences fall. Morgan v. Commissioner,309 U.S. 78 (1940). Section 37 of the Texas Probate Code provides: When a person dies, leaving a lawful will, all of his estate devised *69 or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law; and whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exception aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law. [Tex. Prob. Code Ann. sec. 37 (Vernon 1980).] Section 177(b) of the Texas Probate Code provides: When an executor of the estate of a deceased spouse has duly qualified, such executor is authorized to administer, not *70 only the separate property of the deceased spouse, but also the community property which was by law under the management of the deceased spouse during the continuance of the marriage and all of the community property that was by law under the joint control of the spouses during the continuance of the marriage. The surviving spouse, as surviving partner of the marital partnership, is entitled to retain possession and control of all community property which was legally under the sole management of the surviving spouse during the continuance of the marriage and to exercise over that property all the powers elsewhere in this part of this Code authorized to be exercised by the surviving spouse when there is no administration pending on the estate of the deceased spouse. The surviving spouse may by written instrument filed with the clerk waive any right to exercise powers as community survivor, and in such event the executor or administrator of the deceased spouse shall be authorized to administer upon the entire community estate. [Tex. Prob. Code Ann. sec. 177 (Vernon 1980).] It is thus apparent that under the Texas Probate Code the personal representative of the decedent--in this case *71 petitioner--is authorized to administer in a representative capacity all of the community property which was under the management of the deceased spouse at the time of his death, i.e., the entire community. This reading of the Texas Probate Code is confirmed by case law. For example, in Lovejoy v. Cockrell,63 S.W.2d 1009 (Tex. Comm. App. 1933), the Court held that where a husband left a will appointing someone other than the surviving spouse as executor, the executor had the right and power to take possession of the entire community. A fortiori, the surviving spouse as executrix would be entitled to take such possession. Respondent argues, however, that petitioner held her half of the community interest in the Raymond Lease for her own benefit, either as agent or trustee, which makes the income from that half subject to the self-employment tax. See Sneed v. Commissioner,220 F.2d 313 (5th Cir. 1955), affirming a Memorandum Opinion of this Court. But that argument is beside the point, for it is not petitioner's beneficial enjoyment of the income but the capacity in which she carried on the business of the Raymond Lease which controls under section 1.1402(a)-2(b), Income Tax Regs., *72 and petitioner's actions were entirely consistent with her claim that she carried on the business in her capacity as executrix. There is no alchemy under the facts as presented by which petitioner's executorship can be transferred into an agency relationship with herself. As we read the regulation, the fact that petitioner engaged in the business of managing the lease in a representative capacity makes beneficial enjoyment irrelevant. Respondent argues in the alternative that "the estate of I. J. Huval was not in the process of administration during the taxable year 1978." This strikes us as highly inconsistent with respondent's acquiescence in the estate's method of reporting on Form 1041. The estate filed Form 1041 for the fiscal year ended November 30, 1978, on which it reported one-half of the Raymond Lease income as its own, and the remaining half as petitioner's. Since respondent did not attempt to tax the estate income to petitioner in the deficiency notice nor has respondent done so in an amended answer, we can only conclude that he has accepted the fact that the estate remained under administration during the year in question. This is inconsistent with his argument on *73 brief that the estate was not in the process of administration during 1978. We would observe at this point that respondent has neither relied upon nor cited section 1.641(b)-3, Income Tax Regs., relating to "Termination of estates and trusts." [4] *74 Thus, we are not called upon to consider what might otherwise have been a significant issue in this case, namely, the tension between the termination regulations and section 6166 (relating to installment payment of the estate tax). [5] *75 A substantial potential for abuse may be present where, as here, an estate is to be administered by a sole executor who is also the sole beneficiary. On the other hand, section 6166 undoubtedly raises countervailing arguments in favor of continuing the administration over a long period of time. Since, in any case, the termination-section 6166 issue has not been framed here in a manner in which we can effectively consider it, we do not consider it. Respondent has acquiesced in petitioner's continued status as executrix of an estate under administration insofar as the decedent's share of the community property is concerned, and respondent may not be heard to argue, as he now does on brief, that the estate was not in the process of administration in 1978. For the foregoing reasons, we hold that petitioner is not liable for self-employment tax for the year 1978. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
*. By order dated August 28, 1985, the Chief Judge reassigned this case from Judge Herbert L. Chabot to Judge Arthur L. Nims, III↩, for disposition. 1. All section references are to the Internal Revenue Code of 1954 in effect for the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The text of the contract dissolving the partnership and dividing the assets reflects a June 1, 1967, division date. However, the document was not executed by Huval and Dunigan until June 7, 1967.
3. This date was stipulated by the parties; however, the return itself is dated August 28, 1974. The discrepancy, although not explained in the record, is immaterial to our decision.
4. Section 1.641(b)-3(a), Income Tax Regs., provides: (a) The income of an estate of a deceased person is that which is received by the estate during the period of administration or settlement. The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. For example, where an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order. However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration. Further, an estate will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary). 5. But cf. Rev. Rul. 76-23, 1976-1 C.B. 264 (administration of estate not unreasonably prolonged for purposes of section 641(a)(3) while estate held subchapter S stock and complied with provisions of section 6166).